JEAN E. WILLIAMS, Acting Assistant Attorney General
ROMNEY PHILPOTT, Senior Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Tel: (303) 844-1810 | Fax: (303) 844-1350
Email: Romney.Philpott@usdoj.gov

*Attorneys for Federal Defendant*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

**PUBLIC POWER COUNCIL**,

        Plaintiff,

    v.

**U.S. ARMY CORPS OF ENGINEERS**,

        Defendant.

Case No.: 3:21-cv-00032-HZ

**FEDERAL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DEF.'S REPLY

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

    I.    Plaintiff's Failure to Adequately Allege Standing Deprives this Court of
Jurisdiction ......................................................................................... 2

        A.    PPC has not alleged actual injury to itself as an organization ................. 3

        B.    PPC has not alleged a factual basis for associational standing ................ 4

            1.    PPC's Members do not adequately allege injury resulting
from "Reduced FCRPS Power." ..................................................... 6

            2.    PPC does not adequately allege economic harm to its
members ...................................................................................... 9

                a)    PPC fails to allege facts demonstrating causation for
economic injury. ............................................................ 14

                b)    PPC fails to allege that its alleged injury could be
redressed by the Court ..................................................... 17

            3.    PPC Fails to Adequately Allege Non-
Economic/Environmental Injury ................................................. 18

            4.    PPC Fails to Adequately Allege "Procedural Injury" ................. 23

    II.    PPC's Second Claim, Asserting a Stand-Alone APA Claim, Fails under
Ninth Circuit Precedent ....................................................................... 26

    III.    PPC does not Establish "Prudential Standing" for its NEPA Claim ................. 31

CONCLUSION .................................................................................................... 34

## TABLE OF AUTHORITIES

**Cases**

*Alcoa, Inc. v. BPA,*
   698 F.3d 774 (9th Cir. 2012) ................................................................. 7, 10, 12, 34

*Aleman Gonzalez v. Barr,*
   955 F.3d 762 (9th Cir. 2020) .......................................................................... 28, 29

*Aluminum Co. of Am. v. Adm'r, BPA,*
   175 F.3d 1156 (9th Cir. 1999) ............................................................................... 1

*Am. Diabetes Ass'n v. U.S. Dept. of the Army,*
   938 F.3d 1147 (9th Cir. 2019) ........................................................................ 3, 23

*Am. Indep. Mines & Minerals Co. v. U.S. Dep't of Agric.,*
   494 Fed. Appx. 724 (9th Cir. 2012) ...................................................................... 34

*Apple Inc. v. Allan & Assocs. Ltd.,*
   445 F. Supp. 3d 42 (N.D. Cal. 2020) ................................................................... 13

*Ashley Creek Phosphate Co. v. Norton,*
   420 F.3d 934 (9th Cir. 2005) ............................................................................... 32

*Backes v. Bernhardt,*
   1:19-CV-00482-CL,2020 WL 906313 (D. Or. Feb. 24, 2020) ............................. 28

*Bennett v. Spear,*
   520 U.S. 154 (1997) ......................................................................................... 8, 9

*C. Ariz. Water Conserv. Dist. v. U.S. EPA,*
   990 F.2d 1531 (9th Cir. 1993) ............................................................................. 13

*C. Lincoln Peoples' Util. Dist. v. Johnson,*
   735 F.2d 1101 (9th Cir. 1984) ............................................................................... 7

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke,*
   889 F.3d 584 (9th Cir. 2018) ............................................................................... 31

*Cahen v. Toyota Motor Corp.,*
   147 F. Supp. 3d 955 (N.D. Cal. 2015) ................................................................. 11

*California v. Azar,*
   911 F.3d 558 (9th Cir. 2018) ............................................................................... 25

*Campbell v. Facebook, Inc.,*
   951 F.3d 1106 (9th Cir. 2020) ............................................................................. 26

*Chapman v. Pier 1 Imports (U.S.), Inc.,*
   631 F.3d 939 (9th Cir. 2011) ................................................................................. 3

*Citizens for Better Forestry v. U.S. Dep't of Agric.,*
   341 F.3d 961 (9th Cir. 2003) ............................................................... 6, 24, 25, 26

*Clapper v. Amnesty Int'l USA,*
 568 U.S. 398 (2013)..................................................................................... 10

*Common Cause v. Dep't of Energy,*
 702 F.2d 245 (D.C. Cir. 1983)........................................................................ 17

*Ctr. for Envt'l Sci. Accuracy & Reliability v. Nat'l Park Serv.,*
 14-cv-02063-LJO-MJS, 2016 WL 4524758 (E.D. Cal. Aug. 29, 2016) ................. 23

*DaimlerChrysler Corp. v. Cuno,*
 547 U.S. 332 (2006)...................................................................................... 16

*Demoruelle v. Kucharski,*
 19-cv-00269-JAO-RT, 2019 WL 4739285 (D. Haw. Sept. 27, 2019) .................... 22

*Dep't of Fish and Game v. Fed. Subsistence Bd.,*
 3:20-CV-00195-SLG, 2020 WL 6786899 (D. Alaska Nov. 18, 2020) ................... 30

*DHS v. Regents of the University of California,*
 140 S. Ct. 1891 (2020)............................................................................... 28, 29

*Ecological Rts. Found. v. Pac. Lumber Co.,*
 230 F.3d 1141 (9th Cir. 2000) ....................................................................... 5, 22

*Eichenberger v. ESPN, Inc.,*
 876 F.3d 979 (9th Cir. 2017) ........................................................................ 26

*El Rescate Legal Servs. Inc. v. Exec. Off. of Immigr. Rev.,*
 959 F.2d 742 (9th Cir. 1991) ........................................................................ 27

*Fair Hous. of Marin v. Combs,*
 285 F.3d 899 (9th Cir. 2002) .......................................................................... 3

*Forelaws on Bd. v. Johnson,*
 743 F.2d 677 (9th Cir. 1984) ........................................................................ 20

*Frenzel v. AliphCom,*
 76 F. Supp. 3d 999 (N.D. Cal. 2014) .............................................................. 13

*Friends of the Earth v. Sanderson Farms, Inc.,*
 992 F.3d 939 (9th Cir. 2021) ........................................................................... 4

Further, *Regents of Univ. of Cal. v. U.S. Dept. of Homeland Sec.,*
 966 F.3d 1036 (9th Cir. 2020) ....................................................................... 30

*FW/PBS, Inc. v. City of Dallas,*
 493 U.S. 215 (1990)....................................................................................... 3

*Golden Nw. Aluminum, Inc. v. BPA,*
 501 F.3d 1037 (9th Cir. 2007) ......................................................................... 8

*Gorospe v. C.I.R.,*
 451 F.3d 966 (9th Cir. 2006) ........................................................................ 31

*Heckler v. Chaney*,
  470 U.S. 821 (1985)..................................................................................... 29

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
  593 F.3d 923 (9th Cir. 2010)....................................................................... 19

*Idaho State Snowmobile Ass'n v. U.S. Forest Serv.*,
  1:19-CV-00195-DCN, 2021 WL 493412 (D. Idaho Feb. 10, 2021) ........................ 30

*In re Apple iPhone Antitrust Litig.*,
  11-cv-06714-YGR ,2013 WL 4425720 (N.D. Cal. Aug. 15, 2013) ........................ 13

*In re Gilman*,
  887 F.3d 956 (9th Cir. 2018) ....................................................................... 29

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018) .............................................................. 10, 13

*Innova Sols., Inc. v. Baran*,
  983 F.3d 428 (9th Cir. 2020) ....................................................................... 30

*Int'l. Bhd. of Teamsters v. U.S. Dep't of Transp.*,
  861 F.3d 944 (9th Cir. 2017) ....................................................................... 27

*Krottner v. Starbucks Corp.*,
  628 F.3d 1139 (9th Cir. 2010) .............................................................. 12, 14

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ................................................................ 3, 4

*Lake Forest v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ..................................................................... 3

*Laub v. U.S. Dept.' of the Interior*,
  342 F.3d 1080 (9th Cir. 2013) ....................................................................... 9

*Lazy Y Ranch Ltd. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) ....................................................................... 21

*Leon v. County of San Diego*,
  115 F. Supp. 2d 1197 (S.D. Cal. 2000).......................................................... 12

*Lincoln v. Vigil*,
  508 U.S. 182 (1993).................................................................................... 27

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)............................................................................. 11, 15

*Maricopa-Stanfield Irr. and Drainage Dist. v. United States*,
  158 F.3d 428 (9th Cir. 1998) ....................................................................... 13

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) .............................................................. 16, 17

DEF.'S REPLY                            iv

*McGee v. S-L Snacks Nat'l.*,
    982 F.3d 700 (9th Cir. 2020) ....................................................................... 11, 15

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ............................................................................. 28

*Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ............................................................................. 11

*Mortensen v. Cnty. of Sacramento*,
    368 F.3d 1082 (9th Cir. 2004) ........................................................................... 10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ............................................................................................ 30

*NAACP v. City of Kyle*,
    626 F.3d 233 (5th Cir. 2010) .............................................................................. 4

*Nat'l Council of La Raza v. Cegavske*,
    800 F.3d 1032 (9th Cir. 2015) ............................................................................ 4

*Nat'l Urban League v. Ross*,
    977 F.3d 770 (9th Cir. 2020) ............................................................................ 30

*Nat'l Wildlife Fed'n  v. NMFS*,
    184 F. Supp. 3d 861 (D. Or. 2016) ................................................................... 34

*Navajo Nation v. Dep't of the Interior*,
    *Int.*, 876 F.3d 1144 (9th Cir. 2017) ............................................................ 11, 16

*Nev. Land Action Ass'n v. U.S. Forest Serv.*,
    8 F.3d 713 (9th Cir. 1993) ........................................................................... 32, 33

*Nw. Requirements Utilities v. FERC*,
    798 F. 3d 796 (9th Cir. 2015) ..................................................... 14, 17, 18, 23

*Nw. Resource Info. Ctr., Inc. v. NMFS*,
    56 F.3d 1060 (9th Cir. 1995) ............................................................................ 34

*Or. Nat. Res. Council v. Thomas*,
    92 F.3d 792 (9th Cir. 1996) ................................................................... 27, 29, 30

*Or. Nat. Resources Council Action v. U.S. Forest Serv.*,
    445 F. Supp. 2d 1211 (D. Or. 2006) ................................................................. 28

*P. Rivers v. U.S. Bureau of Land Mgt.*,
    No. 6:16-CV-01598-JR, 2019 WL 1232835 (D. Or. Mar. 15, 2019) ...................... 33

*Pac. Nw. Generating Co-op. v. Brown*,
    38 F.3d 1058 (9th Cir. 1994) ...................................................................... 16, 34

*Pac. Nw. Generating Co-op. v. Brown*,
    822 F. Supp. 1479 (D. Or. 1993) ...................................................................... 16

*Perales v. Casillas,*
   903 F.2d 1043 (5th Cir. 1990) ..................................................................... 28

*Pritikin v. Dep't of Energy,*
   254 F.3d 791 (9th Cir. 2001) ................................................................. 17, 18

*Ramirez v. TransUnion LLC,*
   951 F.3d 1008 (9th Cir. 2020) ..................................................................... 15

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.,*
   415 F.3d 1078 (9th Cir. 2005) ............................................................... 23, 32

*Rivers v. U.S. Bureau of Land Mgmt.,*
   6:16-CV-01598-JR, 2018 WL 6735090 (D. Or. Oct. 12, 2018)..................... 33

*San Luis & Delta-Mendota Water Auth. v. Salazar,*
   638 F.3d 1163 (9th Cir. 2011) ....................................................................... 9

*Schneider v. Ca. Dep't of Corr.,*
   151 F.3d 1194 (9th Cir. 1998) ....................................................................... 3

*Scott v. Pasadena Unified Sch. Dist.,*
   306 F.3d 646 (9th Cir. 2002) ....................................................................... 12

*Shooting Sports Ass'n v. Holder,*
   727 F.3d 975 (9th Cir. 2013) ....................................................................... 10

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016).............................................................. 2, 9, 11, 15, 26

*Steckman v. Hart Brewing Inc.,*
   143 F.3d 1293 (9th Cir. 1998) ..................................................................... 13

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009)............................................................................... 22, 24

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014)..................................................................................... 10

*Svensrud v. Frito-Lay N.A., Inc.,*
   8:20-cv-714-JLS-DFM, 2020 WL 8575056 (C.D. Cal. Dec. 21, 2020)........ 13

*Thompson Metal Fab, Inc. v. U.S. Dep't of Transp.,*
   289 F.R.D. 637 (D. Or. 2013) ..................................................................... 33

*Town of Chester v. Laroe Estates,*
   137 S. Ct. 1645 (2017)................................................................................. 34

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, and Transp. Workers v. Fed. R.R. Admin.,*
   988 F.3d 1170 (9th Cir. 2021) ..................................................................... 30

*United States v. W. Radio Services Co.,*
   869 F. Supp. 2d 1282 (D. Or. 2012) ........................................................... 32

*Van Patten v. Vertical Fitness Grp.*, LLC,
    847 F.3d 1037 (9th Cir. 2017) ............................................................................... 26

*W. Watersheds Project v. Bernhardt*,
    1:16-CV-00083-BLW, 2021 WL 517035 (D. Idaho Feb. 11, 2021) ................................ 30, 31

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................................ 11

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) .............................................................................. 13

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ........................................................................................ 10, 11

*Yount v. Salazar*,
    No. 11-cv-8171-PCT DGC, 2013 WL 93372 (D. Ariz. Jan. 8, 2013)............................... 34

*Zeiny v. United States*,
    No. 19-CV-05806-HSG, 2020 WL 496076 (N.D. Cal. Jan. 30, 2020) .............................. 3

**Statutes**

5 U.S.C. § 706(2)(A) ................................................................................................ 25

16 U.S.C. § 832(c) ..................................................................................................... 7

16 U.S.C. § 839c(a) .................................................................................................... 7

16 U.S.C. § 839c(b)(1) ................................................................................................ 7

16 U.S.C. § 839f(e)(5) ................................................................................................. 1

16 U.S.C.A. § 832c(a) ................................................................................................. 7

43 U.S.C. § 1702(j) ................................................................................................... 31

Pub. L. No. 116-260, 134 Stat 1182 (Dec. 27, 2020) ...................................................... 25

**Regulations**

43 C.F.R. § 2310.1-4 ................................................................................................. 30

## INTRODUCTION

Public Power Council ("PPC") challenges the U.S. Army Corps of Engineers' ("Corps") implementation of Interim Measure No. 5, an operational modification employed at Detroit Dam for the sole purpose of benefiting salmonids listed under the Endangered Species Act ("ESA"). Detroit Dam is part of the Federal Columbia River Power System ("FCRPS"), which consists of thirty-one hydropower projects spread throughout the states of Idaho, Montana, Oregon and Washington and which constitutes  the "world's largest hydropower system." *Aluminum Co. of Am. v. Adm'r, BPA*, 175 F.3d 1156, 1158 (9th Cir. 1999).  The Bonneville Power Administration ("BPA") markets power produced from the FCRPS at rates determined at least every five years pursuant to a statutory process, the decisions of which may be appealed directly to the Ninth Circuit Court of Appeals.  16 U.S.C. § 839f(e)(5).

PPC alleges Interim Measure No. 5, by reducing power production at Detroit Dam during three months every year, will eventually cause them to pay higher rates for power from FCRPS at some unspecified future point.  But its Amended Complaint fails to allege facts that render this conjecture sufficiently concrete, likely, or imminent to establish jurisdiction under Article III. PPC attempts to cure this deficiency with declarations attached to its Opposition—but even if the Court were to consider these declarations (which it should not, given that the Corps' motion presents a facial challenge to the Amended Complaint's allegations), they fail to establish standing for PPC's claims.  Further, while PPC also purports to assert standing based on environmental injury (which injury PPC now clarifies is centered on listed salmonids), PPC is unable to allege any non-speculative environmental harm resulting from Interim Measure No. 5. For good reason.  Interim Measure No. 5 *alleviates* environmental harm to listed salmonids. Finally, PPC's assertion of "procedural injury" resulting from the Corps' allegedly deficient

adoption of Interim Measure No. 5 fails because, inter alia, it fails to identify a related concrete harm to it or its members.

Even if the Court finds it has subject matter jurisdiction, two of PPC's claims fail to state a clam and should be dismissed under Rule 12(b)(6).  PPC's second claim—asserting a stand-alone Administrative Procedure Act ("APA") violation—is barred by Ninth Circuit precedent. While PPC argues that this precedent is no longer valid in light of a recent Supreme Court decision, it fails to demonstrate that the Supreme Court decision is so irreconcilable with the Ninth Circuit's existing case law such that this Court can disregard that long-standing precedent. PPC's third claim—asserting a violation of the National Environmental Policy Act ("NEPA")—falls outside of NEPA's zone of interests because PPC's undisguised purpose for its claim is to promote its economic interests.

## ARGUMENT

## I.     Plaintiff's Failure to Adequately Allege Standing Deprives this Court of Jurisdiction

PPC fails to allege facts that could establish Article III standing for its claims.  PPC alleges no direct harm to itself, and its primary claimed injury—that Interim Measure No. 5 may increase the rates that its members pay for power from the FCRPS—is not supported by any concrete, non-speculative factual allegations that a rate increase as a result of Interim Measure No. 5 is imminent or even likely.  Nor does PPC demonstrate how an economic injury—even if plausible—is redressable by this Court.  It similarly fails to allege any environmental injury supporting its standing—and it cannot establish any concrete harm that would support its alleged "procedural injury."  PPC has accordingly failed to "clearly . . . allege facts demonstrating" each element necessary for Article III standing, and the Court should dismiss the Amended Complaint.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (alteration in original).

### A.    PPC has not alleged actual injury to itself as an organization

PPC has not alleged facts demonstrating injury to itself as an organization.  *See* Mot. to Dismiss ("Motion"), ECF 12 at 11.  In particular, it never alleged that it "suffered 'both a diversion of its resources and a frustration of its mission.'"  *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002); s*ee also Am. Diabetes Ass'n v. U.S. Dept. of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (same).

PPC responds only to this argument in a footnote.  Opp. at 35 n.9.  It asserts that the "two prerequisite criteria" may "reasonably be inferred from its Complaint."  Opp. at 35 n.9.[1]  "It is a long-settled principle," however, "that standing cannot be 'inferred argumentatively from averments in the pleadings.'"  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citation omitted).  Nor does PPC identify any allegation in its Amended Complaint providing a basis for any such inference, as none exist.  *See* Mot. at 11 (citing Am. Compl. ¶¶ 7-14).

PPC also argues that the Declaration of Scott Simms ("Simms Decl."), attached to its opposition at ECF 21, supports organizational standing.  But a "plaintiff may not amend [its] complaint through an opposition."  *See Zeiny v. United States*, No. 19-CV-05806-HSG, 2020 WL 496076, at *3 (N.D. Cal. Jan. 30, 2020) (citing *Schneider v. Ca. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998)).  *See also La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088 (at summary judgment stage, a plaintiff who made no "attempt to allege organizational standing in its complaint" could not cure the defect with declarations).  Put simply, when the complaint is deficient, the plaintiff "lacked standing at the outset," which requires dismissal.  *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 954-55 (9th Cir. 2011) (en banc).

---

[1] Page numbers are to the document's native page number, and not the ECF page number.

Mr. Simms' averments—even had they been reflected in the Amended Complaint—also are inadequate to establish organizational standing. *See* Simms Decl. ¶ 15. His averment that PPC's staff time was used to analyze Interim Measure 5 and its impact on PPC's members ultimately describes PPC's "'business as usual' and a continuation of existing advocacy," which is insufficient to establish organizational standing. *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942, 943 (9th Cir. 2021) ("Diversion of resources has been found when organizations expended *additional resources* that they would not otherwise have expended, and in ways that they would not have expended them.") (emphasis added) (citation omitted). *See also id.* (citing *NAACP v. City of Kyle*, 626 F.3d 233, 238–39 (5th Cir. 2010) for the proposition that "there was no injury sufficient for organizational standing where the resource expenditures were litigation-related or were no different than the organizations' ongoing lobbying activities"); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) (finding standing where organization alleged that it "expended additional resources" on specific activities directly responding to challenged voter law, resulting in reduction of spending on specified programs). This is particularly the case since there is no indication that PPC staff's analysis was used for anything other than to engender this litigation. *See La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088 (an organization cannot "manufacture the injury by incurring litigation costs").

PPC provides no cognizable allegations of injury to it as an organization. PPC therefore it cannot assert standing on that basis. *See id.*

### B.    PPC has not alleged a factual basis for associational standing

PPC also fails to establish "associational standing" based on injury to its members. To establish associational standing, an organization must, inter alia, establish that a member or

members would have standing in their own right—namely that they "have suffered an injury in fact that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical, ... the injury is fairly traceable to the challenged action of the defendant; and ... it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000) (internal quotation omitted). PPC has not rebuffed the Corps' showing that PPC failed to meet this standard in its Amended Complaint.

First, PPC vaguely alleges that its members *may* face economic injury because they *may* end up paying higher rates for power at some unspecified future point, but these allegations are too speculative to invoke the Court's jurisdiction. Mot. at 12-15. And its allegation of harm purely from reduction of power produced at one of the thirty-one hydropower projects in the FCRPS is not plausible—particularly because PPC makes no allegation that its members did not receive all of the power that they wanted from the FCRPS at any point during the three month period when Interim Measure 5 was being implemented. *Id.* at 15.

PPC also failed to allege a factual basis for any non-economic injury. First, the allegations in PPC's Amended Complaint demonstrate that its vaguely described interest in "improperly adopted and legally invalid fish conservation and . . . habitat restoration measures" is actually an interest in avoiding any impact on future power rates, and thus any alleged injury to this interest fails for the same reasons as its claimed economic injury. Mot. at 19-20. Second, even if PPC asserts a distinct injury to broad environmental interests, it fails to show actual injury to any concrete interest of its members. Critically, PPC does not allege *any* environmental harm resulting from Interim Measure No. 5—a measure the Corps implements to *reduce* impacts to listed salmonids. *Id.* at 20-21.

PPC also fails to allege cognizable harms stemming from a procedural claim.  Mot. at 23-24.  As a threshold matter, PPC errs in arguing that it advances (other than its NEPA claim) "procedural" claims that allegedly affect the Article III standing injury.  *See Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003) ("a plaintiff asserting a procedural injury must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing").  *Id.*  For its first claim, alleging that Interim Measure No. 5 is inconsistent with "the statutory purposes and mandates under which the [Detroit Project] was authorized," PPC alleges no procedural requirements imposed by these authorities that the Corps might have violated.  Mot. at 24 (citing Am. Compl. ¶¶ 68-70).  For its second claim, alleging a stand-alone violation of the APA, PPC cannot assert that the APA's broadly applicable standard of review is "designed to protect" any concrete interests PPC asserts.  *Id.* (quoting *Citizens for Better Forestry*, 341 F.3d at 969).  In any event, for standing to exist, a plaintiff must tie its procedural claim to a reasonable risk to a concrete interest, which PPC fails to do.  For its only procedural claim—its NEPA claim—PPC does not allege any particularized interest in any natural resources that might be impacted by Interim Measure No. 5.  Mot. at 24.

In its Opposition, PPC argues that it has adequately alleged four distinct injuries to its members supporting its standing.  None of these arguments overcome the fundamental deficiencies of PPC's Amended Complaint identified in the Corps' Motion.

> 1. <u>PPC's Members do not adequately allege injury resulting from "Reduced FCRPS Power."</u>

PPC first argues that it has adequately alleged harm because it alleged "reduced hydropower to which PPC's members have a statutory right and preference under the [Northwest Power Act.]"  Opp. at 14.  This argument fails for multiple reasons.

First, PPC misconstrues the import of its members' stature as "preference customers" under the Northwest Power Act ("NWPA") by implying that such status gives them a legal right to any power that was not produced as a result of Interim Measure No. 5.  *See* Opp. at 14 & 15 (asserting "statutory entitlement" to power to FCRPS).  It does not.

BPA's marketing of power produced by the FCRPS is subject to a preference system. The Bonneville Project Act provides that BPA must, "in disposing of electric energy generated at said project, give preference and priority to public bodies and cooperatives."  16 U.S.C.A. § 832c(a).  *See also* NWPA, 16 U.S.C. § 839c(a) ("All power sales under this chapter shall be subject at all times to the preference and priority provisions of the Bonneville Project Act").  But "preference" customers are merely given "priority to their applications for power when *competing* applications from nonpreference customers are received."  *Alcoa, Inc. v. BPA*, 698 F.3d 774, 780 (9th Cir. 2012) (emphasis added) (citing 16 U.S.C. § 832(c)).

As such, PPC cannot, consistent with these authorities, claim a right to power that it alleges will not be produced as a result of Interim Measure No. 5.  To be sure, BPA must, upon request, offer to sell "electric power to meet the *firm power load* of such public body, cooperative or investor-owned utility in the Region" under certain circumstances.  16 U.S.C. § 839c(b)(1) (emphasis added).  But the Ninth Circuit has rejected any argument (which PPC appears to be implicitly making) that preference customers are entitled to the "cheapest available power."  *C. Lincoln Peoples' Util. Dist. v. Johnson*, 735 F.2d 1101, 1125 (9th Cir. 1984).

Second, PPC's allegation of generalized harm due to reduced power production at Detroit Dam fails because it does not allege any actual or imminent injury.  PPC does not allege, for instance, that BPA failed to provide the power necessary "to meet the firm power load" of its preference customers as a result of Interim Measure No. 5.  *See Golden Nw. Aluminum, Inc. v.*

*BPA*, 501 F.3d 1037, 1046 (9th Cir. 2007).  *See also* Mot. at 15 (noting that PPC did not allege that its members did not receive power produced by the FCRPS when they needed it).  Indeed, PPC's members do not directly purchase power specifically produced by the Detroit Project (which PPC admits produces "minimal power" compared to other FCRPS dams) but from the FCRPS as a whole.  *See id.* ¶ 7; Mot. at 15 & Ex. D thereto.  Had they suffered such a loss, PPC presumably would have had a factual basis to so allege, because Interim Measure No. 5 (as modified due to certain operational constraints and modifications)[2] has already been implemented commencing in November 2020.  Yet PPC makes *no* factual allegations that its members did not receive power when they needed or requested it during the three months Interim Measure No. 5 was being implemented.[3]

PPC evades by citing inapposite cases addressing concrete losses of irrigation water due to challenged actions.  Opp. at 16.  For instance, it cites to *Bennett v. Spear*, 520 U.S. 154, 168 (1997), where the irrigators established injury by alleging that, due to modified operations of a Bureau of Reclamation project, water they would receive "will be reduced and that they will be adversely affected thereby."  But the Court found "it is easy to presume specific facts under which petitioners will be injured—for example, the Bureau's distribution of the reduction pro rata among its customers."  *Id.*  Such a reduction could be presumed because the plaintiffs alleged a reduction in "the aggregate amount of available water" from the Bureau's project.  *Id.*

---

[2] As described in *NEDC v. Corps*, ECF 178-3, the Corps modified Interim Measure No. 5 during implementation because, among other things, one of the two generating units (or turbines) has been out of service for major repairs.  *Id.* at 3.  While this circumstance is unnecessary to consider in resolving the Corps' Motion, these circumstances (particularly the fact that one of Detroit's two turbines was completely unavailable) renders imprecise the economic analysis of Interim Measure No. 5 provided by Michael Deen, ECF 22, ¶¶ 19-24.

[3] Nor does PPC allege that PPC's members would use every kilowatt produced by the FCRPS in the absence of Interim Measure 5.  Indeed, they expressly recognize the potential for of "surplus" power.  Opp. at 6.

DEF.'S REPLY                                    8

The same is true in *Laub v. U.S. Dept.' of the Interior*, 342 F.3d 1080, 1086 (9th Cir. 2013), where the plaintiffs alleged with specificity that the challenged actions would result in an overall "loss of affordable irrigation water for their agricultural lands."

Unlike in *Bennett*, no such specific facts "easy to presume" here because PPC does *not* allege a reduction in the "aggregate amount" of power available to its members from FCRPS as a whole.  Interim Measure No. 5 has already been implemented this past year—and PPC had the opportunity to allege that its members actually suffered a reduction of the power they needed from FCRPS—but it did not do so.  *Compare San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163, 1169 (9th Cir. 2011) (finding plaintiffs alleged injury because they claim "the issuance of the [Biological Opinion] *has resulted in* reduced water deliveries to south-of-Delta users . . .") (emphasis added).

PPC finally argues that the Corps asks it to "allege in minute level which particular electrons PPC's members may have purchased if their generation had not been forgone. . ." Opp. at 17.  Not so.  The Corps is not demanding that PPC meet an impossible standard, but rather the one established by the Supreme Court, that PPC "clearly . . . allege facts demonstrating" particularized and concrete injury to its members.  *Spokeo*, 136 S. Ct. at 1547 (alteration in original).  PPC does not allege such facts—even though when it filed its Amended Complaint, Interim Measure 5 had already been implemented.  This theory of standing fails.

        2.    <u>PPC does not adequately allege economic harm to its members</u>

PPC effectively concedes that Interim Measure No 5 has not economically harmed its members to this point.  *See* Opp. at 19 (admitting that the rates PPC's members are currently paying, and have been since the Corps began to implement Interim Measure No. 5 in November 2020, were set at the conclusion of BPA's BP-20 rate case in July 2019).  As such, it must do

more than allege "*possible* future injury." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409

(2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  It must establish that "the

threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will

occur.'" *In re Zappos.com, Inc*., 888 F.3d 1020, 1024 (9th Cir. 2018) (*quoting Susan B.

Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).  And because it seeks injunctive relief, its

burden is even more rigorous, in that it must show "a very significant possibility of future

harm." *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013) (quoting

*Mortensen v. Cnty. of Sacramento*, 368 F.3d 1082, 1086 (9th Cir. 2004)).  PPC's allegations fail

to meet these standards.  Mot. at 12-15.

In its Opposition, PPC raises five meritless counterarguments.  First, PPC argues the

absence of an existing, actual harm is not dispositive.  Opp. at 19.  True, but irrelevant.  PPC

has neither established an existing actual harm or one that is sufficiently imminent and

probable.  Mot. at 12-15 (noting that because PPC was not alleging current injury, it was

alleging a future injury and failed to meet the applicable standards for alleging future harms).[4]

Second, PPC argues that the Corps mischaracterized the Amended Complaint by arguing

that PPC failed to adequately allege that its members will necessarily pay "higher rates than

they otherwise would have" as a result of Interim Measure No. 5.  Opp. at 20-21.  There is no

mischaracterization.  The Corps directly quoted the same paragraphs that the Opposition relies

upon.  Mot. at 12-13 (citing Am. Compl. ¶¶ 8 & 9).  Neither paragraph "clearly ... allege[s]

facts demonstrating" imminent or actual economic harm to PPC's members.  *See Spokeo*, 136

---

[4] PPC argues that the court in *Alcoa*, 698 F.3d 774 found standing for a challenge to a BPA
decision to sell power to an aluminum company rather than sell the power for a higher rate on the
market (thereby reducing its profits, which could have been used to reduce rates charged to
preference customers).  Opp. at 20.  But the Ninth Circuit did not address the petitioners'
standing for that specific claim.  And, as discussed below at p. 12, the case does corroborate the
speculative nature of PPC's claimed injury.

S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).  *See also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (a "litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements").

To be sure, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct *may* suffice," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  But the Ninth Circuit has emphasized that "[w]e do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations," and, most especially, where jurisdiction is at stake, "[w]e cannot construe the complaint so liberally as to extend our jurisdiction beyond its constitutional limits."  *Navajo Nation v. Dep't of the Int.*, 876 F.3d 1144, 1163 (9th Cir. 2017)) (quoting *.W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

Moreover, in cases where a party is alleging economic injury, the party must allege facts supporting its theory of economic loss.  *See McGee v. S-L Snacks Nat'l.*, 982 F.3d 700, 708 (9th Cir. 2020) (finding that plaintiff lacked standing because she had not made specific allegations that might have supported her claimed economic injury); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 970 (N.D. Cal. 2015), *aff'd*, 717 Fed. Appx. 720 (9th Cir. 2017) (unpublished) ("Cases in this District hold that conclusory allegations of economic loss stemming from a speculative future risk of harm cannot establish Article III standing unless plaintiffs plead "something more.")  PPC's conclusory allegations that PPC's "members end up paying, through higher power rates, for fish and wildlife measure that the Corps adopts or implements at *any* FCRPS facilities," including Interim Measure No. 5, are insufficient.

Third, PPC erroneously argues that BPA necessarily passes the costs of any reduced hydropower generation at Detroit Dam from Interim Measure No. 5 to PPC's members. Multiple, intervening steps—including a statutory administrative proceeding—occur between the

application of Interim Measure No. 5 and the setting of rates by BPA.  Mot. at 6-7; 14-15.

Assuming Interim Measure No. 5 even registers in BPA's rate-setting process (given its limited

scope in the greater FCRPS portfolio), the BPA Administrator has broad discretion to absorb

such impacts "to further BPA's business interests consistent with its public mission."  *See Alcoa,*

*Inc.*, 698 F.3d at 789.  And notably, PPC has publicly congratulated itself for helping convince

BPA—for the *next* rate period—to hold "program expenses below inflationary levels", including

"holding Power Service's program expenses flat for the upcoming rate period, meaning *four*

*years* without any increase."  Mot., Ex. F at ECF 12-1 at 43 (emphasis added).

PPC's imprecise suggestion of future economic harm is also insufficient because it

cannot allege any risk of *imminent* future harm.  *Krottner v. Starbucks Corp*., 628 F.3d 1139,

1142 (9th Cir. 2010) ("[a] plaintiff may allege a future injury in order to comply with [the injury-

in-fact] requirement, but only if he or she "is *immediately* in danger of sustaining some direct

injury as the result of the challenged . . . conduct and the injury or threat of injury is both real and

immediate, not conjectural or hypothetical.") (quoting *Scott v. Pasadena Unified Sch. Dist*., 306

F.3d 646, 656 (9th Cir. 2002) (emphasis in *Scott*).  *See also Leon v. County of San Diego*, 115 F.

Supp. 2d 1197, 1200 (S.D. Cal. 2000) (a court "does not have to accept as true conclusory

allegations that contradict facts which may be judicially noticed") (citing *Steckman v. Hart*

*Brewing Inc*., 143 F.3d 1293, 1295–96 (9th Cir. 1998)).  Under these circumstances, PPC's

allegations fail to demonstrate the requisite imminence for its claimed injury.  *In re Zappos.com,*

*Inc*., 888 F.3d at 1024 (plaintiff must show "the threatened injury is certainly impending, or there

is a substantial risk that the harm will occur") (internal quotation omitted).

Fourth, PPC argues that "economic or pecuniary injury is not overly speculative so as to

not be cognizable even though the precise value of such harm may be uncertain."  Opp. at 22.

DEF.'S REPLY                             12

But the Corps never argued that PPC's alleged injury is speculative because the amount is uncertain. The Corps' contention is that PPC has failed to adequately allege whether—and when—the injury will occur. The cases cited by PPC are thus inapposite. *See* Opp. at 22 (quoting *Maricopa-Stanfield Irr. and Drainage Dist. v. United States*, 158 F.3d 428, 434 (9th Cir. 1998); *C. Ariz. Water Conserv. Dist. v. U.S. EPA*, 990 F.2d 1531, 1538 (9th Cir. 1993)).

PPC also relies upon the declaration of its Policy Director, Michael Deen, in which he purports to calculate the economic impact—in terms of lost power production—from Interim Measure No. 5. Opp. at 22. The Court should not evaluate Mr. Deen's declaration to rule on the Corps' facial challenge—to the extent PPC wishes to again amend its complaint to include information contained therein, it may seek leave to do so. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("it is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014); *see also Svensrud v. Frito-Lay N.A., Inc.*, 8:20-cv-714-JLS-DFM, 2020 WL 8575056, at *5 (C.D. Cal. Dec. 21, 2020) (refusing to allow plaintiff to "cure the deficiencies of her standing allegations through the Declaration") (quoting *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)); *In re Apple iPhone Antitrust Litig.*, 11-cv-06714-YGR, 2013 WL 4425720, at *7 (N.D. Cal. Aug. 15, 2013) (considering declarations attached to opposition to opposition to Rule 12(b)(1) "only with respect to whether leave to amend should be granted").[5]

---

[5] Although the Court should not review Mr. Deen's declaration, to ensure a clear record, there are several problems with Mr. Deen's analysis. Most importantly, although he purports to have reviewed, and accounted for, the Corps description of how Interim Measure No. 5 was actually implemented in December 2020, *see* Deen Decl. ¶¶ 16, 18, he does not take into account the fact that *one* of Detroit Dam's *two* generating units has been out of service due to major repairs unrelated to Interim Measure No. 5. *Id.* at 4. Furthermore, the spreadsheet he provides purporting to demonstrate overall "Total Program Expenses, Forgone Revenues & Power

Finally, PPC argues that the Corps does not apply the appropriate economic analysis because the relevant inquiry is not whether the rates PPC's members may pay in the future will increase but, instead, whether they will be greater than they otherwise would have been. Opp. at 23. But this attempt to reframe its allegations does not cure PPC's failure to adequately allege a factual basis that *any* impact on rates its members pay is likely, or imminent. *See supra* at 11-12. PPC's Amended Complaint does not allege how—or when—the rates its members pay will be higher than they would have been in the absence of Interim Measure No. 5. *See Krottner*, 628 F.3d at 1142 (a plaintiff must allege he or she "is *immediately* in danger of sustaining some *direct* injury as the result of the challenged . . . conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical."). *Compare with Nw. Requirements Utilities*, 798 F.3d 796, 803, 805 (9th Cir. 2015) (finding substantial risk of increased rates where BPA had *already* adopted a program under which it would provide compensation to certain generators, and had expressly stated in its decision adopting the program that the increased costs resulting from it "would be recovered from power customers.") (internal quotation omitted). PPC's alleged economic harm—at some unspecified point in the future—does not suffice.

a)    <u>PPC fails to allege facts demonstrating causation for economic injury.</u>

Even if PPC had plausibly alleged that its members would face economic injury by paying higher rates for power from the FCRPS in the future, PPC fails to adequately allege that such injury would be caused by Interim Measure No. 5. Mot. at 15-16. In its opposition, PPC barely addresses this argument—and the arguments it makes are meritless.

---

Purchases" (which presumably quantifies the "costs" that BPA must pass along under PPC's analysis) shows a $176.5 million *reduction* between 2019 (before Interim Measure No. 5 was implemented) and 2020 (when it was implemented for two months). ECF No. 2201 at 4.

PPC argues that it expressly alleged that its asserted injuries are "fairly traceable" to the Interim Measure No. 5 by quoting Paragraph 14 of the Amended Complaint, which states: "PPC and its members have legally cognizable interests that have been, and will continue to be, adversely affected within the meaning of Article III and the APA, 5 U.S.C. § 702, for constitutional and statutory standing purposes that are being caused by and fairly traceable to Interim Measure No. 5." Opp. at 32. PPC here relies on a formulaic legal conclusion of causation, which the courts have repeatedly held are not sufficient to establish standing. *McGee*, 982 F.3d at 705 (quoting *Spokeo*, 136 S. Ct. at 1547) ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing.").

Next, PPC relies on the "relaxed" standard applicable to alleged violations of procedural rights. *See* Opp. at 32 (*citing Lujan*, 504 U.S. at 572 & n. 7). However, PPC ignores that the fact that only one of its claims is indisputably seeking to enforce "a procedural requirement"—its third claim, asserting a violation of NEPA. *See infra* at 24-25. As such, PPC cannot rely the "relaxed standard" for causation and redressability for its other claims. S*ee Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1024 (9th Cir. 2020), cert. granted in part, 141 S. Ct. 972 (2020) (a "plaintiff must demonstrate standing for each claim he seeks to press" (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006))). Moreover, even for procedural claims, notwithstanding the relaxed standard, "plaintiffs must identify how the challenged action threatens, to a reasonable probability, some separate interest belonging to them." *Navajo Nation*, 876 F.3d at 1166–67.

PPC has not done so. It argues that the "tenor and thrust" of the Corps' argument—that PPC must establish causation for its claim its members will pay higher rates—was rejected in *Pac. Nw. Generating Co-op. v. Brown*, 38 F.3d 1058, 1061 (9th Cir. 1994). PPC is wrong. In

that case, the plaintiffs had standing because there was no question that the challenged actions would result in the economic harm to the plaintiffs. *Id.* Indeed, in the district court, the parties stipulated to, *inter alia*, the following facts: (1) the Corps and Reclamation "increased water flows in the [FCRPS] for the purpose of benefitting the migration of juvenile listed species; (2) which "diminished the use of the water for power production and thus reduced the amount of power available to the BPA for marketing and increased costs of power supply by $60 million;" and that (3) "BPA expects to recover its increased costs from its customers." *Pac. Nw. Generating Co-op. v. Brown*, 822 F. Supp. 1479, 1485 (D. Or. 1993).

PPC makes no similar allegations in its Amended Complaint. It does not attempt to "establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011). Moreover, even should the Court elect to consider the Deen Declaration, Mr. Deen fails to address the fact (discussed above) that BPA's rate-setting will necessarily require consideration of a variety of factors and circumstances related to the *entire* FCRPS (which, unlike here, was at issue in *Pac. Nw. Generating Co-op.*).[6] And he fails to account for the possibility of discretionary decisions by the BPA Administrator impacting whether any economic impacts of Interim Measure No. 5 are passed along as increases to PPC members' rates.

Ultimately, given the narrow scope of Interim Measure No. 5—a measure implemented for only part of the day, for a quarter of the year, on only one of the thirty-one dams in the

---

[6]With respect to the FCRPS, BPA has made clear that even modified operations for a *much* larger component of the system, the Columbia River System (encompassing the fourteen federal projects on the mainstem Columbia and lower Snake rivers), may result in only modest rate pressure that is "generally manageable within [its] cost structure," even before accounting for the "potential offsetting cost reductions Bonneville may engage in to reduce this pressure." Record of Decision; Columbia River System Operations Environmental Impact Statement, 85 Fed. Reg. 63,834, 63850 & n.39 (Oct. 8, 2020).

FCRPS—PPC fails to tackle with non-speculative factual allegations the multiple inferences required to establish that Interim Measure No. 5 will have a "determinative effect" on the rates that PPC's members may pay in the future. *See Nw. Requirements Utilities,* 798 F.3d at 806.  As such, it fails to "establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'"  *See Maya*, 658 F.3d at 1070.

b)   PPC fails to allege that its alleged economic injury could be redressed by the Court

For similar reasons, PPC fails to demonstrate that a favorable order in this matter likely will redress its alleged economic injury.  *See* Mot. at 16-17.  Ultimately, any alleged impact on the rates paid by PPC's members at some point in the future will be independently determined after an administrative process by non-party BPA—not the Corps, the defendant in this case.  *See Pritikin v. Dep't of Energy*, 254 F.3d 791, 799–800 (9th Cir. 2001) (citing *Common Cause v. Dep't of Energy*, 702 F.2d 245, 254 (D.C. Cir. 1983)).

PPC yet again relies on a "substantially relaxed" standard for redressability where a plaintiff asserts procedural claims.  Opp. at 33-34.  But, again, PPC disregards that only one of its claims alleges a procedural violation.  *See infra* at 24-25.

Otherwise, PPC continues to downplay the fact that the rates that PPC's members will pay in the future will be the result of BPA's cost-projection and rate-setting process, in which numerous factors and circumstances will be at play.  Mot. at 14-15.  PPC's alleged injury presents a case of "third party causation" because its economic injury could only be addressed by ensuring that BPA (rather than the Corps) will not, at some point, increase the rates PPC's members pay for power from the FCRPS.  Mot. at 16-17 (citing *Pritikin*, 254 F.3d at 801).  As noted, BPA has considerable discretion in setting rates, including absorbing costs associated with individual mitigation actions like Interim Measure No. 5 (to the extent there are any costs or

revenue losses).  Thus, PPC has not demonstrated "a substantial likelihood" that an order preventing the Corps from continuing to implement Interim Measure No. 5 "would be more favorable to [PPC or its members]."  *See Nw. Requirements Utilities*, 798 F.3d at 805.  PPC has accordingly failed to allege that its alleged economic injury is redressable.

3.   PPC Fails to Adequately Allege Non-Economic/Environmental Injury

PPC also bases its associational standing on allegations that Interim Measure No. 5 adversely effects a vaguely described, and putatively non-economic interest related to the imposition of "cost-effective" and legally valid measures to protect listed species.  *See* Am. Compl. ¶ 10.  *See also id.* ¶ 14.  But PPC does not allege concrete or cognizable injury to this ambiguously described interest.

First, the alleged injury arises from the same concerns as its alleged economic injury— potential impacts to the rates its members pay for power from the FCRPS (which impacts are inadequately alleged, as discussed above).  *See* Mot. 18-20.  Second, even assuming that the injury is not duplicative of PPC's defective economic injury, PPC fails to allege any concrete injury particularized to its members.  PPC's alleged broad interest in the adoption of measures that will benefit listed species while not "flout[ing] another statutorily authorized purpose" cannot support PPC's standing.  *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 930 (9th Cir. 2010) ("plaintiffs' general displeasure with the Forest Service's failure to comply with its statutory duties," and "their desire to see the Nation's laws . . . faithfully enforced" is not enough to establish injury under Article III.") (internal quotations omitted). Moreover, PPC's Amended Complaint alleges—at most—broad "environmental interests" of some of its members, it fails to identify any concrete and imminent environmental injury— particularized to its members—that Interim Measure No. 5 might cause.  Mot. at 20-22.

DEF.'S REPLY                18

PPC's opposition fails to overcome these defects.  It refers to its members' broadly described interest in "the adoption of measures at Detroit Dam designed to benefit and avoid jeopardizing listed fish species that will also not flout or be inconsistent with another statutorily authorized purpose of the dam, power production, and which are the most cost-effective means of doing so given that they bear such a large burden of the costs of such measures."  Opp. at 24 (quoting Am. Compl. ¶ 10).  But this allegation simply re-states, in different terms, its allegation that PPC's members' economic interests may be harmed by Interim Measure No. 5 in the future. Mot. at 20.

Moreover, on its face, the allegation does not identify any concrete environmental injury resulting from Interim Measure No. 5.  *Id.*  In its Opposition, PPC asserts that its members' alleged environmental injuries arise "primarily from impacts to listed fish species."  *See* Opp. at 14.  But (as discussed more fully below), PPC makes no cognizable allegation that Interim Measure No. 5—which is being implemented for the *benefit* of listed species—will detrimentally impact such species.  *See* Mot. at 21.

This absence of any alleged environmental harm easily distinguishes PPC's asserted injury from that asserted the two complaints cited by PPC.  *See* Opp. at 24-25 (quoting complaints from *NEDC v. U.S. Army Corps of Eng'rs*, Case No. 1:18-cv-437-HZ (D. Or) and *NWF v. NMFS,* Case No. 01-cv-640-SI (D. Or.)).  The Opposition itself reflects that those two complaints alleged that operations of the Willamette Valley Project and FCRPS, respectively, caused injury particularized to the respective plaintiffs by impacting environmental resources— and the plaintiffs' interests in and *use* of such resources.  *See id.  See also Forelaws on Bd. v. Johnson*, 743 F.2d 677, 680 (9th Cir. 1984) (cited by PPC) (finding standing supported by allegation that member of environmental organization lived in the region (and was a consumer of

electric power), in light of the "*environmental consequences* of the [challenged] contract")
(emphasis added).

No such allegations are present in PPC's Amended Complaint.  To be sure, as PPC
argues, it alleged in the Amended Complaint that Interim Measure No. 5 "may result in
unacceptable water temperature effects downstream."  Opp. at 27-28.  But PPC never alleges that
such temperature effects will result in more harm listed salmonid species than would otherwise
occur in the absence of Interim Measure No. 5 (much less harm to any other resource in which
PPC's members assert a specific interest).  *See* Am. Compl. ¶ 12.  *See also* Opp. at 14.

Moreover, PPC's Opposition establishes that this allegation is wholly based on a
misunderstanding of Interim Measure No. 5 and its implementation.  PPC states that the
"allegation was taken almost verbatim from the Corps' revised Interim Measures Plan itself."
Opp. at 28 (quoting *NEDC*, ECF No. 130-1 at 10).  As PPC notes, the Corps recognized in its
June 2020 Interim Measures Implementation Plan for the Willamette Valley Project that
"[o]perations of the [regulating outlets] and limiting turbine operations," as contemplated by the
measure, could result in "unacceptable water temperature effects downstream."  Opp. at 28
(quoting *NEDC*, ECF No. 130-1 at 10).  But PPC disregards what the Implementation Plan was
actually saying—it was describing those circumstances in which Interim Measure No. 5's
proposed operations would *not* be implemented.  ECF 130-1 at 10 (noting that because of
temperature concerns, "achieving objectives of this measure *may not be feasible* at all times in all
years").  That is why the discussion of temperature impacts occurs in the description of the
"Limitations" of Interim Measure No. 5.  *Id.*  This restriction on Interim Measure 5's
implementation is corroborated by the June 2020 letter from the Corps to NMFS.  ECF 12-1 at 6.
Therein, the Corps expressly noted that "[i]mplementation of this interim measure is subject to

hydrologic conditions, adherence to minimum gate openings, and deviations as the Corps

determines is necessary to . . . (3) manage downstream temperature conditions in accordance

with the 2008 Biological Opinion on WVP operations, as updated through the WATER process

and documented in the Willamette Fish Operations Plan."  ECF No. 12-1 at 6.

Accordingly, PPC's allegation of "temperature impacts" from Interim Measure No. 5 is

contradicted by the very Implementation Plan that forms the basis of PPC's allegation.  As such,

the Court should disregard the allegation.  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th

Cir. 2008) ("we need not accept as true allegations contradicting documents that are referenced

in the complaint or that are properly subject to judicial notice").  Without this allegation, PPC's

Amended Complaint is devoid of any allegation of environmental injury resulting from Interim

Measure No. 5.

Notwithstanding, PPC also argues that its alleged environmental injuries "overlap and are

necessarily intertwined" with its alleged economic injuries.  Opp. at 24-25.  PPC discusses at

length its analysis of the Northwest Power Act's provisions providing for FCRPS's funding,

through BPA's power customers, of "the biological restoration of the [Columbia River] Basin's

salmon runs," and discusses the substantial costs of such efforts, which are funded by "BPA's

customers."  Opp. at 25-26.  But this asserted broad interest in the greater operation of the

FCRPS and federal basin-wide efforts to address impacts on listed salmonids under the NWPA

are not at issue in this litigation.  PPC is challenging one specific interim measure, implemented

at one of the thirty-one FCRPS projects.  It therefore is incumbent upon PPC to allege how *that*

specific measure creates an environmental injury suffered by PPC's members.  As demonstrated

above, it fails to do so.  Thus, any "concrete environmental injury that is threatened by an agency

action" that PPC asserts in its Opposition appears nowhere in its Amended Complaint.  Opp. at
27.

Finally, PPC argues that "it is not plaintiff's environmental interest that has to be specific
or concrete, but the injury itself."  Opp. at 27.  This contention, unsupported by any citation to
caselaw, is manifestly incorrect.  Even if the Court could ignore the Supreme Court's clear
instruction that allegations of "generalized harm to . . . the environment will not alone support
standing."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009), case law from this Circuit
emphasizes the need to assert a specific interest in the environmental resources at issue.
*Ecological Rts. Found*, 230 F.3d at 1147 ("The 'injury in fact' requirement in environmental
cases is satisfied if an individual adequately shows that she has an aesthetic or recreational
interest in a *particular place, or animal, or plant species* and that that interest is impaired by a
defendant's conduct." ) (emphasis added); *Demoruelle v. Kucharski*, 19-cv-00269-JAO-RT,
2019 WL 4739285, at *4 (D. Haw. Sept. 27, 2019) (dismissing complaint for failure to establish
"connection to the area of concern sufficient to make credible the contention" of injury); *See Ctr.
for Envt'l Sci. Accuracy & Reliability v. Nat'l Park Serv.*, 14-cv-02063-LJO-MJS, 2016 WL
4524758, at *13 (E.D. Cal. Aug. 29, 2016) (finding that were plaintiff provided "no explanation
of his purported interest in the species beyond stating in a conclusory manner that he is
committed to protecting them," his "vague, unspecific interest is insufficient to establish an
injury in fact").

Ultimately, PPC's attempted reframing of the applicable standard does not help because
PPC fails to allege a "specific or concrete . . . injury itself."  Opp. at 27.  As discussed above,
PPC makes no cognizable allegation that Interim Measure No. 5 results in environmental injury

at all—let alone an injury specific to its members' asserted interests.  Under these circumstances,

PPC's attempt to find standing for its claims based on non-existent environmental injury fails.[7]

4.    PPC Fails to Adequately Allege "Procedural Injury"

Finally, PPC fails to adequately allege a "procedural injury" that would provide it with

standing for its claims.  Mot. at 23-25.  As the Corps demonstrated in its Motion, only one of its

claims—its third claim, alleging a violation of NEPA—avers the violation of any mandatory

"procedural rules" designed to protect any alleged concrete interest of PPC's members.  Mot. at

24 (citing *Citizens for Better Forestry,* 341 F.3d at 969  ("a plaintiff asserting a procedural injury

must show that the procedures in question are designed to protect some threatened concrete

interest of his that is the ultimate basis of his standing").  Consistent with the discussion above,

PPC has not alleged any reasonably probable threat to any concrete interest of PPC's members.

*Id.* (citing *Citizens for Better Forestry*, 341 F.3d at 969) (a plaintiff asserting procedural injury

must establish that it is "reasonably probable that the challenged action will threaten [its]

concrete interests").  As such, PPC alleges, at most, "a procedural right *in vacuo*" which "is

insufficient to create Article III standing." *Summers*, 555 U.S. at 496.

---

[7] For this reason, PPC cannot establish redressability either with respect to its alleged
environmental injury.  Even if PPC had adequately alleged an injury to listed salmonids, it fails
to allege facts that circumstances would be more favorable for the listed salmonids if the Court
vacated Interim Measure No. 5.  *See also Nw. Requirements Utilities*, 798 F.3d at 805.

In addition, PPC also fails to demonstrate that advancing any environmental issue implicated in
this litigation is germane to its organizational purposes.  *See Am. Diabetes Assoc.*, 938 F.3d at
1155.  As discussed therein, PPC's mission and purpose are not focused on its
"members' power and transmission supply, costs, rates, and contracts."  PPC's Opposition give
little reason to question this reality.  *See Ranchers Cattlemen Action Legal Fund United
Stockgrowers of Am. v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1104 (9th Cir. 2005) (finding
environmental interests asserted in NEPA claim were not connected to "the 'trade and
marketing' interests [plaintiff] is organized to protect.").

In its opposition, PPC argues that all three of its claims allege violations of procedural rules, thus allowing it to assert procedural injury. Opp. at 29 (arguing that the Corps failed "to follow express statutory duties under both the APA and NEPA, as well as failing to comply with an implicit obligation not to substantially deviate from the statutory purpose of hydropower production for Detroit Dam without first preparing a deauthorization study."). This argument misses the point. A procedural claim alone does not establish standing. PPC must establish how the claims cause concrete and particularized harm to its members' interests, which it has not done. In any event, PPC errs in classifying all three claims as "procedural claims."

In its first claim, PPC alleges Interim Measure No. 5 is inconsistent with "the statutory purposes and mandates under which the [Detroit Project] was authorized," but makes no allegation that such statues impose procedural requirements that the Corps violated. Am. Compl. ¶¶ 63, 68-70. In its opposition, PPC seeks to avoid this reality by "implying" a procedural obligation arising from Section 218 of the Water Resources Development Act ("Section 218"). Opp. at 29 (citing Am. Compl. ¶ 13). *See also* Am. Compl. ¶ 59 (describing Water Resources Development Act). But PPC has not alleged that the Corps violated Section 218—nor could it. Section 218 requires only that the Defense Department provide an "initial analysis of deauthorzing hydropower as a project purpose" at Detroit Dam—by 2022. Am. Compl. ¶ 59. It does not impose any procedural obligation that the Corps conceivably could have violated by implementing Interim Measure No. 5. *See* Consol. Approp. Act of 2021, Pub. L. No. 116-260, 134 Stat 1182, 2692, Div. AA, § 218 (Dec. 27, 2020).

Next, PPC's second claim—alleging "arbitrary and capricious" agency action under APA § 706(2)(A) —can reasonably be deemed as imposing a procedural obligation giving rise to an assertion of procedural injury. PPC does not provide any case law suggesting that APA § 706(2)

can be deemed as imposing "certain procedural rules" that "are designed to protect some threatened concrete interest of [PPC] that is the ultimate basis of [PPC's] standing." *See Citizens for Better Forestry*, 341 F.3d at 969.  Determining that APA § 706(2)'s standard of review imposes procedural rules "designed to protect" PPC's alleged specific concrete interests render meaningless the second prong of the procedural injury standard in *Citizens for Better Forestry*. *Any* claim invoking § 706(2) and its "arbitrary and capricious" standard of review would be subject to analysis as a claim for procedural injury.  It would also render Congress' distinctions irrelevant because Congress specifically distinguished between "arbitrary and capricious" claims (APA § 706(2)(A)) and procedural violation claims (APA § 706(2)(D), providing for review of claims that an agency acted "without observance of procedure required by law").  5 U.S.C. § 706(2)(A), (D).  *Compare California v. Azar*, 911 F.3d 558, 571 (9th Cir. 2018) (noting that defendants "do not dispute that the *notice and comment process* [required under APA § 553] could have protected and was designed to protect the states' economic interest") (emphasis added).

In any case, PPC cannot meet the third prong of the *Citizens* test for any of its three claims.  As discussed above, PPC has failed to demonstrate that Interim Measure No. 5 threatens its asserted concrete interests.  PPC, however, contends that it need not tie its procedural claim to concrete interests, arguing that the Supreme Court "advised that 'the violation of a procedural right granted by statute can in certain circumstances be adequate to constitute injury in fact." Opp. at 30 (quoting *Spokeo*, 136 S. Ct. at 1549).  But the unusual circumstance described in *Spokeo* applies only where Congress has expressly authorized suit based upon a violation of a particular statute to prevent specific harm the statute was enacted to address.  *See id.* (clarifying that "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has

identified").  The Ninth Circuit recently explained its interpretation of *Spokeo*, holding that when "a statutory provision identifies a *substantive* right that is infringed any time it is violated, a plaintiff bringing a claim under that provision 'need not allege any further harm to have standing.'"  *Campbell v. Facebook, Inc*., 951 F.3d 1106, 1117 (9th Cir. 2020) (quoting *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 983–84 (9th Cir. 2017) (emphasis added).  *See also Eichenberger*, 876 F.3d at 984 (reasoning that every violation of the pertinent statute "present[s] the precise harm and infringe[s] the same privacy interests Congress sought to protect" by enacting the [statute]) (quoting *Van Patten v. Vertical Fitness Grp*., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017)).

No such statute is at issue here.  At most, PPC suggests that the Ninth Circuit treated NEPA as such a statute in *Citizens for Better Forestry*, 341 F.3d 961.  Opp. at 30.  To the contrary, the Ninth Circuit *emphasized* the need for a NEPA plaintiff to meet the "concrete interest test" by alleging "that they will suffer harm by virtue of their geographic proximity to and use of areas that will be affected by the [challenged action."  *Id.* at 971.

Finally, PPC notes that "[it] and other preference customers have regularly litigated NEPA claims . . . under similar circumstances."  Opp. at 31.  The Corps does not deny that a NEPA violation *can* lead to a procedural injury, as long as it is tied to a reasonable threat to its concrete interest—*Citizens for Better Forestry* makes this clear.  What the Corps argues is that PPC has not adequately alleged a threat to any such concrete interest.  The cases PPC cites are thus inapposite.  *See* Opp. at 32.

In sum, just as with its other asserted injuries, PPC fails to allege a factual basis for its asserted procedural injury, and its claims should be dismissed for lack of standing.

## II.    PPC's Second Claim, Asserting a Stand-Alone APA Claim, Fails under Ninth Circuit Precedent

Even if PPC had established standing, its claim that the Corps violated the APA by acting in an "arbitrary and capricious" manner should be dismissed for failure to state a claim under Rule 12(b)(6).  Mot. at 25-27.  As the Ninth Circuit has explained, absent a statute (or regulation) with substantive standards, judicial review is precluded because there is no "law to apply" and "no meaningful standard against which to judge the agency's exercise of discretion."  *Or. Nat. Res. Council v. Thomas ("ONRC")*, 92 F.3d 792, 798 (9th Cir. 1996) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)).  Consequently, the existing law in this Circuit is that "arbitrary and capricious review [under APA § 706(2)(A)] does not apply in the absence of a statutory benchmark against which to measure an agency's exercise of discretion."  *Int'l. Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 955 (9th Cir. 2017).  *See also El Rescate Legal Servs. Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742, 753 (9th Cir. 1991) (a claim that fails to identify a "relevant statute" cannot qualify for the APA's private right of action).[8]

PPC makes only a half-hearted, one-sentence argument that its APA claim is based on any substantive statute.  Opp. at 40 (noting that "PPC's action does cite and rely on substantive statutes with mandatory purposes and authorities . . . namely the Flood Control Acts of 1938, 1948, and 1950").  But PPC does not even attempt to connect these statutes to the conduct it challenges, namely the Corps' alleged failures to (1) consider all relevant factors; (2) adhere to its own "legal standard," as identified in an internal legal memorandum (which was an exhibit in

---

[8] This principle regularly has been applied in this Court.  *See Backes v. Bernhardt*, 1:19-CV-00482-CL, 2020 WL 906313, at *3 (D. Or. Feb. 24, 2020) (rejecting stand-alone APA claim, because the APA "'do[es] not declare self-actuating substantive rights, but rather, . . . merely provide a vehicle for enforcing rights which are declared elsewhere.'") (*quoting Perales v. Casillas*, 903 F.2d 1043, 1050 n. 4 (5th Cir. 1990)); *Or. Nat. Resources Council Action v. U.S. Forest Serv.*, 445 F. Supp. 2d 1211, 1223 n.3 (D. Or. 2006) ("the APA relates to the court's authority and standard of review of agency actions, and does not give rise to a cause of action absent some other statutory or regulatory duty").

the NEDC case); (3) adequately explain to the public its adoption of the measure; (4) comply

with its "own internal direction" to deviate from prior operations; and (5) allow for comment by

"those most directly affected by Interim Measure No 5."  Am. Compl. ¶ 70.

Instead, PPC argues that the Ninth Circuit cases relied upon by the Corps are no longer

good law in light of *DHS v. Regents of the University of California ("Regents")*, 140 S. Ct. 1891

(2020) and two subsequent Ninth Circuit cases that it asserts recognize the ability of a plaintiff to

assert a stand-alone APA claim.  Opp. at 40.  However, in the Ninth Circuit, "a decision of a

prior three-judge panel is controlling unless and until a superseding ruling comes from higher

authority, including the Supreme Court or a panel of our court sitting en banc."  *Aleman*

*Gonzalez v. Barr*, 955 F.3d 762, 768 (9th Cir. 2020) (citing *Miller v. Gammie*, 335 F.3d 889, 893

(9th Cir. 2003) (en banc)).  While the superseding ruling need not be "be identical in order to be

controlling," it "must have undercut the theory or reasoning underlying the prior circuit

precedent in such a way that the cases are clearly irreconcilable."  *Id.*  The "'clearly

irreconcileable requirement is a high standard:'" the reasoning and principles of the superseding

ruling must be "so fundamentally inconsistent with our prior cases that our prior cases cannot

stand."  *Id.* (quoting *In re Gilman*, 887 F.3d 956, 962 (9th Cir. 2018)).

Here, that "high standard" is not met.  Neither *Regents* nor the other Ninth Circuit cases

cited by PPC expressly addressed the question of whether, in circumstances like those here, a

plaintiff might assert a violation of Section 706(2) without reference to a substantive statute or

regulation providing the Court with "law to apply" or a "meaningful standard against which to

judge the agency's exercise of discretion."  *See ONRC*, 92 F.3d at 798.  To be sure, the *Regents*

Court did hold that the Department of Homeland Security's decision to rescind the Deferred

Action for Childhood Arrivals ("DACA") was "arbitrary and capricious in violation of the

APA," without any apparent reliance on any substantive statute or regulation. *Regents*, 140 S. Ct. at 1915. But the specific issue of reviewability under the APA addressed by the Court was whether the specific agency action challenged in that case was one that was "committed to agency discretion by law" under APA § 701(a)(2). *Id.* Specifically, the Court rejected the government's argument that rescission of DACA acted as a "general non-enforcement policy is equivalent to the individual non-enforcement decision in [*Heckler v. Chaney*, 470 U.S. 821 (1985)]," finding that DACA was more than a non-enforcement policy, and that therefore *Chaney* did not apply. *Id.*

Here, no similar contention is raised—and *Regents* did not directly address the specific question here, namely whether *any* government action is subject to review under the APA as a stand-alone claim for arbitrary and capricious agency action absent a statute or regulation defining the agency's discretion.[9] Following *Regents*, two district courts in this Circuit continued to implicitly recognize the Ninth Circuit's existing precedent. *See Idaho State Snowmobile Ass'n v. U.S. Forest Serv.,* 1:19-CV-00195-DCN, 2021 WL 493412, at *9 (D. Idaho Feb. 10, 2021) (rejecting plaintiff's "attempt to save Count One by providing the statute on which the APA claim is based"); *Dep't of Fish and Game v. Fed. Subsistence Bd.*, 3:20-CV-00195-SLG, 2020 WL 6786899, at *14 (D. Alaska Nov. 18, 2020) (addressing merits of claims after concluding that they were *not* "'standalone' APA claims"). And while the Ninth Circuit has not addressed *ONRC's* continued viability, it has continued to apply its reasoning subsequent to *Regents*. In *National Urban League v. Ross*, 977 F.3d 770, 777 (9th Cir. 2020), the court

---

[9] The Ninth Circuit cases cited by PPC did not expressly address the validity of stand-alone APA claims either. *See Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, and Transp. Workers v. Fed. R.R. Admin.*, 988 F.3d 1170, 1178 (9th Cir. 2021); *Innova Sols., Inc. v. Baran*, 983 F.3d 428, 431 (9th Cir. 2020). Further, *Regents of Univ. of Cal. v. U.S. Dept. of Homeland Sec.*, 966 F.3d 1036, 1038 (9th Cir. 2020), is simply a one-sentence order remanding the cases in light of the Supreme Court's decision in *Regents*.

explained that "[a]gency action is arbitrary and capricious where the agency "entirely failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 . . . (1983), an analysis which "turns on what [the] relevant substantive statute makes 'important.'" *Id.* (quoting *ONRC*, 92 F.3d at 798).  As such, *ONRC* and *Intl. Bhd. of Teamsters* are not "clearly irreconcilable" with *Regents.*

In its Opposition, PPC cites to a recent district court decision questioned *ONRC's* continued viability in light of *Regents*.  ECF 20 at 47 (citing *W. Watersheds Project v. Bernhardt*, 1:16-CV-00083-BLW, 2021 WL 517035, at *15 (D. Idaho Feb. 11, 2021)). However, that court largely relied on its determination that that the relevant claim relied upon a substantive regulation, which provided "a meaningful standard by which to judge the BLM's exercise of discretion." *Id.* (citing 43 C.F.R. § 2310.1-4).  It further noted that a statute—the Federal Land Management and Policy Act—"provides additional reference points and policies to guide judicial review of the BLM's decision. *Id.* at *16 (citing 43 U.S.C. § 1702(j)).  Here, in contrast, PPC is unable to point to any statute or regulation by which the Court could judge the Corps' "exercise of discretion."  *Id.*

Finally, even if the Court agrees with PPC that under *Regents*, it is permissible under some circumstances for a party to assert a stand-alone violation of APA § 706(2)(A), it should not extend *Regents* to PPC's APA claim.  PPC ultimately frames its APA claim as asserting that the Corps violated a "procedural duty."  Opp. at 31.[10]  But a separate provision of APA § 706 expressly addresses procedural violations.  Specifically, APA § 706(2)(D) provides that a court should hold unlawful agency action that is taken "without observance of procedure required by law."  It would render § 706(2)(D) unnecessary if any agency action alleged to be procedurally

---

[10] As discussed above, *supra* at 25, the Corps disputes this contention.

inadequate could also be challenged as "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law" under APA § 706(2)(A).  *See Gorospe v. C.I.R.*, 451 F.3d 966, 970

(9th Cir. 2006) ("We will not interpret one provision of a statute so as to render another

provision surplusage").  PPC does not allege that the Corps' implementation of Interim Measure

No. 5 was taken "without observance of procedure" required by any statute or regulation, and its

claim should be dismissed.

### III.    PPC Does not Establish "Prudential Standing" for its NEPA Claim

PPC's third claim, alleging a violation of NEPA, should also be dismissed under Rule

12(b)(6) because PPC's primary alleged harm—economic injury—does not fall within NEPA's

zone of interests.  Mot. at 27-28.  It is well-established in the Ninth Circuit that when a plaintiff

asserts injury to purely economic interests, its claim falls outside of NEPA's zone of interests.

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 606 (9th

Cir. 2018) ("we have 'consistently held that purely economic interests do not fall within NEPA's

zone of interests'") (quoting *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 939 (9th Cir.

2005); *Ranchers Cattlemen Action*, 415 F.3d at 1103 ("to assert a claim under NEPA, a plaintiff

must allege injury to the environment; economic injury will not suffice"); *Nev. Land Action*

*Ass'n v. U.S. Forest Serv.*, 8 F.3d 713, 716 (9th Cir. 1993) ("The purpose of NEPA is to protect

the environment, not the economic interests of those adversely affected by agency decisions.").

While it claims otherwise in its Opposition, PPC's NEPA claim is aimed at redressing its

alleged economic injury.  The remedy PPC seeks under its NEPA claim makes its economic

interest manifest:  it asks the Court to enjoin the Corps from implementing Interim Measure No.

5 "or implementing any other measure that will *substantially interfere with hydropower*

*production* at Detroit Dam, or any measures that will *adversely affect hydropower production* at

Detroit Dam without first complying with NEPA."  Am. Compl. Prayer for Relief, ¶ E (emphasis

added).  Moreover, as discussed above, the measure that PPC asks the Court to set aside was

expressly implemented to solely to promote the survival of listed species.  PPC makes no

allegation that the measure will not do so—and, as discussed above, fails to allege any

cognizable environmental harm caused by Interim Measure No. 5.  *See infra* at 19-21.  *See also*

*United States v. W. Radio Services Co.,* 869 F. Supp. 2d 1282, 1285 (D. Or. 2012), *aff'd sub nom.*

*Oberdorfer v. Jewkes*, 583 Fed. Appx. 770 (9th Cir. 2014)(unpublished) (rejecting plaintiff's

NEPA claim because "[n]o environmental harms, however, are alleged in Plaintiffs' complaint").

    These circumstances are fatal to PPC's NEPA claim.  NEPA was enacted in order "to

promote efforts which will prevent or eliminate damage to the environment and biosphere and

stimulate the health and welfare of man."  *Nev. Land Action Ass'n*, 8 F.3d at 716.  PPC does

not—and cannot—allege that the enjoining of Interim Measure No. 5 "would benefit the natural

environment."  *Id.* at 713.  Indeed, it does not allege any adverse environmental consequence as a

result of Interim Measure No. 5.  As such, it cannot invoke NEPA to insist that the Court prevent

any operations that will "adversely affect hydropower production" Am. Compl., Prayer for

Relief ¶ E.

    PPC, however, claims that it asserts "intertwining interests that are both economic and

environmental."  Opp. at 38.  But the Ninth Circuit and this Court have readily rejected such

arguments where, as is the case here, economic interests are the primary driver of the plaintiff's

claim.  For instance, in *Nevada Land Action*, the plaintiff argued that its "members have an

economic interest in maintaining the forest resources and therefore in protecting the

environment."  8 F.3d at 716.  The Ninth Circuit rejected this argument, noting that the plaintiff

"does not allege that the increased grazing levels it seeks would benefit the natural environment,

and there seems to be substantial evidence to the contrary." *Id.  See also Rivers v. U.S. Bureau of Land Mgmt.,* 6:16-CV-01598-JR, 2018 WL 6735090, at *6 (D. Or. Oct. 12, 2018), report and recommendation adopted sub nom. *P. Rivers v. U.S. Bureau of Land Mgt.*, No. 6:16-CV-01598-JR, 2019 WL 1232835 (D. Or. Mar. 15, 2019), *aff'd* 815 Fed. Appx. 107 (9th Cir. 2020) (unpublished) (rejecting parties' asserted environmental interests because "'their de facto interest in the proposed action is limited to whether it could potentially reduce timber yields and, by extension, have a negative economic impact on their companies or members"); *Thompson Metal Fab, Inc. v. U.S. Dep't of Transp.*, 289 F.R.D. 637, 642 (D. Or. 2013) (rejecting argument that plaintiff's "purely economic interest falls within NEPA's zone of interest merely because it uses the Columbia River to further its economic interest or because its 'productivity' would be adversely affected by the CRC Project.").  Again, its claimed environmental interests notwithstanding, PPC cannot assert that the enjoining of any measures impairing hydropower production that it seeks would "benefit the natural environment;" rather, such remedy is aimed at furthering its economic interests.[11]

Finally, PPC notes that "PPC and other preference customers have previously brought and litigated NEPA claims under similar circumstances."  Opp. at 38.  But none of the cases addressed NEPA's zone of interests.  *See Alcoa*, 698 F.3d at 795; *Nw. Resource Info. Ctr., Inc. v. NMFS*, 56 F.3d 1060 (9th Cir. 1995); *Pac. Nw. Generating Co-op*, 38 F.3d at 1065 (addressing zone of interests under ESA, not NEPA); *Nat'l Wildlife Fed'n v. NMFS*, 184 F. Supp. 3d 861 (D.

---

[11] This circumstance also distinguishes PPC's claim from that in *Yount v. Salazar*, No. 11-cv-8171-PCT DGC, 2013 WL 93372, at *18 (D. Ariz. Jan. 8, 2013), where the plaintiffs asserted that the mining project they wished to pursue was "both the most economically beneficial *and least environmentally damaging way* to mine uranium."  *Id.* (emphasis added).

Or. 2016).[12]  In summary, PPC's undisguised economic interest underlying its NEPA claim—and its failure to allege any environmental harm from Interim Measure No. 5—remove it from NEPA's zone of interests, and the claim should be dismissed.

## CONCLUSION

As the Corps demonstrated in its Motion, PPC has failed to properly invoke the jurisdiction of this Court because it fails to allege facts that could demonstrate that it has standing to pursue its claims.  Even if PPC could demonstrate standing, its second claim, asserting a "stand-alone" APA claim, fails to state a claim under well-established Ninth Circuit precedent. Furthermore, because PPC's NEPA claim is driven by its economic interest, it does not fall within NEPA's zone of interests, and it should be dismissed as well.

Respectfully submitted this 2nd day of June, 2021.

JEAN E. WILLIAMS
Acting Assistant Attorney General

*/s/ Romney S. Philpott*
ROMNEY PHILPOTT, Senior Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Tel: (303) 844-1810 | Fax: (303) 844-1350
Email: Romney.Philpott@usdoj.gov

*Attorneys for Federal Defendants*

---

[12] PPC claims that its status as intervenor in *NWF v. NMFS* is relevant because it involves similar NEPA claims and because the Supreme Court ruled in *Town of Chester v. Laroe Estates*, 137 S. Ct. 1645, 1651 (2017) that intervenors who seek relief beyond the original parties must establish standing.  Opp. at 39 n.12.  This is disingenuous because PPC was granted intervention in that case in 2003—over a decade before there was a NEPA claim asserted in that case and before the Supreme Court's 2017 decision.  *See NWF v. NMFS*, No. 01-cv-640, Docket Nos. 34 & 1928.

## CERTIFICATE OF SERVICE

I certify that on June 2, 2021, the foregoing was electronically filed with the Court's electronic filing system, which will generate automatic service upon all Parties enrolled to receive such notice.

*/s/ Romney S. Philpott*
Romney Philpott